FILED
2023 MAY 23 PM 3:03
CLERK
U.S. DISTRICT COURT

TRINA A. HIGGINS, United States Attorney (#7349)
SIRENA MILLER WISSLER, Assistant United States Attorney (#7450)
BRADY WILSON, Assistant United States Attorney (#17350)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. SHERELDON CLY YANITO, Defendant. | Case No.   4:23-mj-00087-PK **SEALED COMPLAINT** Judge Paul Kohler |

Before the Honorable Paul Kohler, United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

**COUNT I**

**21 U.S.C. § 841(a)(1)**
(Distribution of a Controlled Substance Resulting in Death)

On or about April 14, 2022, within the District of Utah,

SHERELDON CLY YANITO,

defendant herein, did knowingly and intentionally distribute Fentanyl (N-phenyl-N- [ 1-(2-

1

phenylethyl) – piperidinyl ] propenamide), a Schedule II controlled substance within the meaning of 21 U.S.C. § 812, the use of which result in the death of Person 1, and did aid and abet therein, all violation of 21 U.S.C. § 841(a)(1) and punishable pursuant to 21 U.S.C. § 841(b)(1)(C).

This complaint is made on the basis of investigation consisting of the following:

### Agent Background

Your affiant, Paul Tittensor, is a Detective with the West Valley Police Department and currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I have been employed by West Valley PD since 2014. I am "a law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a Detective and TFO I have investigated and/or participated in investigations of conspiracy, the use, distribution and trafficking of narcotics, smuggling and the illegal possession and sale of firearms. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered, including through the use of

computers, smart phones, digital media and the internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I have also received specialized training in the investigation of incidents in which the ingestion of controlled substances – specifically, Fentanyl – has resulted in serious bodily injury and/or death. I am currently detailed to the DEA, Salt Lake City District Office Group 1 Interdiction team.

### Statement of Probable Cause

1. On or about April 15, 2022, the San Juan County Sheriff's Office and Grand County Sheriff's Office responded to a suspected overdose death of Person 1. The initial officers conducted a crime scene survey, and located several pieces of wrinkled-up aluminum foil in a nearby trash can. The aluminum foil had burns on one side and a burned residue on the other side, which characteristics are consistent with aluminum foil used to ingest a controlled substance. Investigators also located a rolled-up $5.00 bill was found, which led officers to believe Person 1 had likely ingested a controlled substance by means of inhalation. Witness 1, who had found Person 1 deceased, advised investigators that Person 1 had been inquiring about where he/she could acquire controlled substances in the week prior to Person 1's death.

2. Following a post-mortem examination, Erik D. Christensen, M.D. concluded that Person 1 died as a result of Fentanyl intoxication.

3. Agents interviewed Person 1's associates. Witness 2 advised investigators that Person 1 had been purchasing counterfeit Percocet pills which Person 1 knew to contain

Fentanyl.  According to Witness 2, Person 1 had been attempting to stop using the counterfeit Percocet pills and had even moved out of the area in an attempt to distance him/herself from the person who provided Person 1 with Fentanyl.  Witness 2 advised investigators that Person 1 acquired Fentanyl from Shereldon YANITO (a/k/a "Bobby") and others.

4. During a follow-up interview with Witness 1, Witness 1 advised that he spent time with Person 1 the night before he/she died.  According to Witness 1, Person 1 had been struggling with addiction, but was attempting to stop using Fentanyl.  Witness 1 informed investigators that he had made a purchase of Fentanyl for himself from "Bobby," who Witness 1 confirmed to be Sherelden YANITO, using Venmo to make the payment to YANITO.  Witness 1 stated that knew Person 1 got the Fentanyl pill from YANITO, because YANITO sent him a Snapchat message saying he had sold "something" to Person 1.  According to Witness 1, YANITO sold counterfeit blue "M30" pills containing Fentanyl to multiple people, including himself, Person 1, and another person who had overdosed and nearly died.  Witness 1 stated that when he first began acquiring blue "M30" pills from YANITO, he believed them to be legitimate pharmaceuticals but only learned later that they contained Fentanyl.[1]  Witness 1 reported that YANITO charged $40 per pill for counterfeit "M30" pills containing Fentanyl.

---

1 Based upon my training and experience, I know that legitimate pharmaceuticals are required by law to bear unique identifying markings.  Some forms of legitimate pharmaceutical oxycodone (a Schedule II controlled substance available only by prescription) are marked "M30" and are blue in color.

5. Witness 3, a family member of Person 1's, advised that she had seen Person 1 on the night immediately prior to his/her death. According to Witness 3, she observed a Venmo transaction from Person 1 to YANITO's Venmo account the night before Person 1's death. Agents later confirmed the $40 Venmo transaction between Person 1 and an account associated with YANITO. Financial research revealed that on April 14, 2022 at 7:38:27 PM, a Venmo account associated with YANITO received a payment of $40.00 from Person 1 with the comment for item as the "fire emoji".[2] Investigators also confirmed that on the same date, the same Venmo account associated with YANITO received a payment of $40 from Witness 1.

6. On or about June 19, 2022, deputies with the Grand County Sheriff's Office and emergency medical personnel responded to a call of an unresponsive person in the 1300 block of Red Valley Court in Moab, Utah. Upon arrival, they observed YANITO on the couch in a confused state. YANITO'S father, who was present at the residence, provided officers with multiple unidentified pills that he had reportedly located in YANITO'S bedroom. Shortly after the Grand County Sheriff's Department left the residence, YANITO'S mother summoned them back to the residence. She advised that she had located several small blue pills in the garage near where YANITO plays video games. The pills were stamped "M30" and subsequently tested positive for opioids.

---

[2] Based upon my training and experience, I know that the term "fire" or the "fire emoji" icon are used by individuals using and/or trafficking in controlled substances to signify that a particular controlled substance is very high quality.

7. On or about June 27, 2022, Grand County Sheriff's Deputies had a follow-up conversation with YANITO's mother regarding the blue "M30" pills. YANITO'S mother was advised that the "M30" pills were Fentanyl pills and were highly dangerous. After YANITO'S mother explained that YANITO was attempting to stop using the blue pills but could not do so, she was advised that it might be prudent for her to obtain some Narcan to have in the house in case of an accidental overdose.[3]  At that point, YANITO'S mother indicated that she had been carrying Narcan and that she had administered some to YANITO shortly before the ambulance had arrived at their home on June 19, 2022.

8. On or about June 24, 2022, a deputy with the Grand County Sheriff's Office conducted a traffic stop on Witness 4. The traffic stop was wholly unrelated to the death of Person 1. After being advised of his *Miranda* rights, Witness 4 advised that he wished to provide information regarding persons in Grand County who were selling "blues" containing Fentanyl. According to Witness 4, he felt compelled to provide the information because these people were selling "blues" to "little kids." After providing information about two people selling "blues," Witness 4 was asked about "Bobby" YANITO. Witness 4 then stated that "Bobby" had told him that he ("Bobby") had "killed a kid." When asked whether he knew the victim's name, Witness 4 provided Person 1's correct first name. Witness 4 explained that shortly after Person 1's death,

---

3 Based upon my training and experience, I know that Narcan is the brand-name for Naloxone, which is a fast-acting opioid antagonist which reverses the effects of opioids. Patients who receive Narcan often wake up feeling confused, disoriented, and sometimes, combative.

Witness 4 and YANITO were hanging out at Witness 4's place when YANITO told Witness 4 about "killing [Person 1]." Witness 4 described YANITO as "sad about it" and "crying."

9. On or about May 22, 2023, DEA Task Force Officer Sarah Mullen, acting in an undercover capacity, sent a text message to YANITO's known cell phone number. Although TFO Mullen and YANITO had no prior relationship, TFO Mullen claimed the two had met before. TFO Mullen advised YANITO that she would be traveling through the Moab area and was interested in purchasing "blues." After instructing TFO Mullen to contact him via Instagram (a social media application that allows the sharing of photographs and text), YANITO sent TFO Mullen a copy of a photograph she had posed on her undercover Instagram page. The photo depicts a small bag of "blues." YANITO questioned TFO Mullen about the "blues," and he stated that he did not have any "blues" and that few people in the area were still using them because so many people had "OD'd" on them. YANITO also commented on how expensive "blues" cost, noting that when he had them, he sold them for $40 per pill before the price dropped to $35.

10. Following some additional messages regarding powder cocaine, YANITO agreed to meet TFO Mullen at her hotel room. Surveillance agents observed YANITO leave his known residence in a vehicle known to be associated with YANITO. Before he reached the hotel, YANITO was the subject of a traffic stop. He was arrested and transported to the Grand County Jail, where he was advised of his *Miranda* rights.

Although he invoked his right to remain silent, YANITO continued to speak despite not being questioned, volunteering that he was not involved in drugs anymore and that he believed he was being targeted because he was the "only one still around" while others involved in the same activity had left town.

Based on the foregoing information, your affiant respectfully requests that a warrant of arrest be issued for Shereldon Cly Yanito for violation of 21 U.S.C. §841(a)(1).


/s/ Paul Tittensor
Affiant, Paul Tittensor
Task Force Officer, DEA


SUBSCRIBED AND SWORN to before me this 23rd day of May, 2023.

Paul Kohler
United States Magistrate Judge


APPROVED:

TRINA A. HIGGINS
United States Attorney

/s/ Sirena Miller Wissler
Sirena Miller Wissler
Assistant United States Attorney